1

2

3

4

5

6

7                        **UNITED STATES DISTRICT COURT**

8                        **CENTRAL DISTRICT OF CALIFORNIA**

9

10   CATHY WASHINGTON,              )    NO. CV 04-7669  (Mc)
                                    )
11              Plaintiff,          )
                                    )    MEMORANDUM OF DECISION
12         v.                       )    AND ORDER IN A SOCIAL
                                    )    SECURITY CASE
13   JO ANNE B. BARNHART,           )
     Commissioner of the           )
14   Social Security Administration,)
                                    )
15              Defendant.          )
     _____)

16

17        The plaintiff, CATHY WASHINGTON,[1] filed the present action for

18   review of a final determination of the Commissioner of Social Security

19   (the "Commissioner") that the plaintiff is not disabled and not

20   entitled to supplemental security income ("SSI") disability benefits.

21   For the reasons set forth below, the court finds that the

22   Commissioner's decision is not supported by substantial evidence.  The

23   matter, therefore, is remanded for further proceedings.

24                              **BACKGROUND**

25        The plaintiff filed an application for supplemental security

26   income disability benefits under the Social Security Act (the "Act")

27   \\\

28   \\\

_____

[1]The plaintiff is also known as Cathy Toller. [AR 51.]

1  on September 11, 2001.[2] [Administrative Record ("AR") 51-54.]  The

2  Commissioner denied the application initially and on reconsideration.

3  [AR 35-38, 40-43.]  At the plaintiff's request, an administrative

4  hearing was held before Administrative Law Judge Edward C. Graham

5  the "ALJ") on November 19, 2003. [AR 180-98.]  On January 22, 2004,

6  the ALJ filed a decision concluding that the plaintiff was not under a

7  disability as defined in the Act at any time through the date of the

8  decision. [AR 19-24.]  The Appeals Council denied the plaintiff's

9  request for review of the ALJ's decision. [AR 5-8.] The decision of

10 the ALJ stands as the final decision of the Commissioner.

11      Thereafter, the plaintiff filed the present action.  The

12 plaintiff and the Commissioner have consented to proceed before a

13 United States Magistrate Judge.  The parties have entered into a joint

14 stipulation setting forth their arguments.

15                        **STANDARDS OF REVIEW**

16      The court must sustain the findings of the Commissioner unless:

17 (a) they are not supported by substantial evidence in the record as a

18 whole; or (b) the Commissioner applied an improper legal standard.

19 See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human

20 Services, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence

21 means "more than a mere scintilla" but less than a preponderance.

22 Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

23 L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human

24 Services, 846 F.2d 573, 576 (9th Cir. 1988).  "Substantial evidence"

25 is evidence a "reasonable mind might accept as adequate to support a

26 \\\

27

28      [2]The plaintiff filed a previous application in 1994 which was
   denied at the initial level and not appealed. [AR 69.]

- 2 -

1  conclusion." Richardson v. Perales, 402 U.S. at 402; Gordon v.

2  Secretary of Health and Human Services, 803 F.2d at 1072.

3       This court must review the record as a whole and consider adverse

4  as well as supporting evidence. See Green v. Heckler, 803 F.2d 528,

5  529-30 (9th Cir. 1986). Where evidence is susceptible of more than

6  one rational interpretation, the court must sustain the Commissioner's

7  decision. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.

8  1984).

9                    **THE FIVE-STEP SEQUENTIAL EVALUATION**

10      The Commissioner has established a five-step sequential

11  evaluation for determining whether a person is disabled. First, the

12  Commissioner determines whether the person is engaged in "substantial

13  gainful activity." If so, the Commissioner denies disability

14  benefits. Second, if the person is not so engaged, the Commissioner

15  determines whether the person has a medically severe impairment or

16  combination of impairments. If the person does not have a severe

17  impairment or combination of impairments, the Commissioner denies

18  benefits. Third, if the person has a severe impairment, the

19  Commissioner determines whether the impairment meets or equals one of

20  a number of "listed impairments." If the impairment meets or equals a

21  "listed impairment," the Commissioner conclusively presumes that the

22  person is disabled. Fourth, if the impairment does not meet or equal

23  the "listed impairments," the Commissioner determines whether the

24  impairment prevents the person from performing past relevant work. If

25  the person can perform past relevant work, the Commissioner denies

26  benefits. Fifth, if the person cannot perform past relevant work, the

27  burden shifts to the Commissioner to show that the person is able to

28  perform other kinds of work. The person is entitled to disability

benefits only if he or she is unable to perform other work.  See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

## **FINDINGS OF THE ALJ**

The plaintiff was born April 12, 1955. [AR 51.]  The plaintiff has a ninth grade education. [AR 20, 181.]  The ALJ found that the plaintiff's past work experience included work as an in-home care-giver.  [AR 20.]   The plaintiff alleges that she has been unable to work since February 27, 2001, because of a dislocated left shoulder, internal chest injuries, and pain in both legs. [AR 60.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. The ALJ found that the plaintiff had ganglion cysts on her left foot which were "severe" but that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

The ALJ further found that the plaintiff's allegations concerning her limitations were not totally credible and that the plaintiff retained the residual functional capacity to perform medium level work.  More specifically, the ALJ found that the plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently.  However, the plaintiff must be able to alternate between sitting and standing positions at will. The ALJ found that the plaintiff was unable to perform her past relevant work.  However, considering the plaintiff's age-that of a younger individual,[3]-the plaintiff's education and vocational background along with her residual functional capacity for

---

[3]20 C.F.R. § 416.963(c) defines a "younger person" as someone under age fifty.

a significant range of medium work, and using Medical-Vocational Rule
203.25 as a framework for decision-making, there were a significant
number of jobs in the national economy which the plaintiff could
perform.  Accordingly, the ALJ concluded that the plaintiff had not
been under a "disability" as defined in the Act at any time through
the date of his decision. [AR 23.]

**THE PLAINTIFF'S CONTENTIONS**

The plaintiff ostensibly raises six issues.  The plaintiff
contends that the record is incomplete, citing the numerous instances
of "inaudible" testimony in the transcript.  The plaintiff also
charges that the ALJ erred in failing to give appropriate weight to
the opinions of the treating physician.  The plaintiff further
contends that the ALJ's residual functional capacity assessment is not
based upon substantial evidence.  The plaintiff also argues that the
ALJ failed properly to evaluate the plaintiff's own subjective
impairments and complaints of pain.  The plaintiff further contends
that the ALJ's hypothetical to the vocational expert was incomplete.
Last, the plaintiff contends that she was deprived of her right to a
full and fair hearing because, according to the plaintiff, the record
suggests that the ALJ did not give the plaintiff's case his full
attention.

**DISCUSSION**

**The ALJ's credibility finding**

Once the plaintiff has established by objective or clinical
findings the existence of a medically determinable impairment which
may reasonably account for the symptoms alleged, although not
necessarily the severity alleged, the ALJ may not reject subjective
symptoms without citing specific and legitimate reasons for doing so.

Where there is no affirmative evidence of malingering, the reasons must be clear and convincing.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ found that the plaintiff had the medically determinable impairment of ganglion cysts.  It also appears that the ALJ may have accepted that the plaintiff had back pain based upon the examination of the consultative orthopedist in December, 2001, although there is no record of further treatment for any back pain thereafter. [AR 21.] Other impairments noted in the record were "transitory, acute ailments." [AR 20.]

The plaintiff testified essentially that she spends most of the day in bed with her left foot elevated because of her left foot ganglion cyst.  [AR 185, 194.]

The ALJ rejected the plaintiff's allegations as to the severity of her complaints citing sufficiently clear and convincing reasons for doing so.  The ALJ cited the inconsistency in the plaintiff's complaints during her various doctor's visits, the disproportion between the plaintiff's subjective complaints and objective findings, and the plaintiff's inconsistent statements concerning her daily activities. [AR 21-22.]

The plaintiff, on the other hand, argues that to say that her subjective complaints were out of proportion to the objective findings is not a sufficient reason for rejecting her subjective complaints. The very nature of excess pain, which is the reason that credibility findings are required in the first place, is that the degree of pain is unsupported by objective findings.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  However, although the lack of objective findings to support the severity of the pain

alleged cannot be the sole reason for finding the plaintiff not credible, it is, nevertheless, a valid consideration.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).

In the plaintiff's case, the ALJ further inferred by the references to the complaints being out of proportion to findings that there was exaggeration of the plaintiff's complaints, not just that there was "excess" pain. [AR 20.] For example, the ALJ noted that the consultative orthopedist, Dr. Howard Hambrecht, observed that the plaintiff complained of "severe pain caused by a very light touch over her anterior chest." [AR 20; AR 119.] Dr. Hambrecht noted that this was a positive "Waddell's sign" [AR 119] "which suggest[s] a functional component to the claimant's pain." Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001).  Approximately one year later, another consultative examiner, Dr. Haniffa Cassim, also commented upon the plaintiff's pain reaction.  Dr. Cassim observed that on the plaintiff's left foot, there was a ganglion cyst about one to 1.5 cm in diameter.  There was also a healed surgical scar.  The plaintiff complained "of pain whenever [Dr. Cassim] touched this, but [Dr. Cassim was] not sure whether she has real tenderness over this site." [AR 20, 162.]  This same disproportionate pain was noted by the plaintiff's treating podiatrist, Dr. Manuel Alvaro, who, like Dr. Hambrecht, noted that the pain was out of proportion to findings. [AR 171; see also AR 166.] The ALJ's inference from these observations that the plaintiff's pain was exaggerated was a reasonable inference in light of the observations of several physicians who provided very specific descriptions of the plaintiff's pain reaction and in light of Dr. Hambrecht's reference to Waddell's signs.

\\\

1    The record further supports the ALJ's finding concerning the
2    inconsistent nature of the plaintiff's complaints.  When the plaintiff
3    filed for benefits, her main complaints were of the residuals of her
4    motor vehicle accident of February, 2001.  The plaintiff's complaints
5    of pain with breathing, yawning, and getting out of bed were due to
6    chest and shoulder pain. [AR 81.] In October, 2001, shortly after
7    filing her application, the plaintiff received treatment for her left
8    shoulder. [AR 132-34.]  There are no further records of complaints of
9    left shoulder pain after December, 2001, and at the hearing in this
10   matter, the plaintiff testified only to "just a little bit" of
11   shoulder problems. [AR 186.]

12   When the plaintiff saw Dr. Hambrecht in December, 2001, her
13   complaints were primarily over the anterior thorax. [AR 116.] However,
14   when tested, the plaintiff exhibited not only some loss of range of
15   motion of the left shoulder but loss of range of motion of the back as
16   well with complaints of pain.  Otherwise, there was normal contour and
17   no spasm.  Straight leg raising was negative and motor and sensation
18   were normal. Reflexes were symmetric.  [AR 117, 118.]

19   By September, 2002, when seen by consultative examiner Dr.
20   Haniffa Cassim, there were no significant findings in the low back or
21   the neck, and sensation, motor strength, and reflexes were all normal.
22   [AR 161-62.] Likewise, there were no significant abnormalities in the
23   left shoulder [AR 161], and the plaintiff's complaints were confined
24   to the left leg [AR 159].

25   The ALJ also cited the inconsistencies in the plaintiff's own
26   statements concerning her daily activities. For example, he noted that
27   the plaintiff essentially testified that she was unable to complete
28   any household chores, whereas the plaintiff told Dr. Cassim that she

did her own cooking, although she did not do the housework because "her friend does the housework." [AR 159.] Therefore, the ALJ inferred that the plaintiff, at the time of Dr. Cassim's evaluation, was able to perform housework but that she did not do so because she did not have to do so.  Although the plaintiff argues that the friend might just as well have performed the housework because the plaintiff was unable to do so, the ALJ's interpretation of the evidence is a reasonable one.  The plaintiff did not tell Dr. Cassim that she did not do the housework because of inability to do so.  It is the ALJ who is responsible for resolving conflicts in the evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  Even if the evidence is susceptible of another rational interpretation, if the ALJ's interpretation is reasonable, it must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

The plaintiff explains that the various inconsistencies by arguing that the plaintiff's complaints to her physician would be expected to vary "based on many factors, including the time of day, the activity or inactivity that precipitated the pain, the amount of time that has elapsed since a prior visit, and so on." [Joint Stipulation at 20.] Similarly, the plaintiff explains that the statements cited by the ALJ concerning the plaintiff's activities were made a year apart. [Id.] This may well explain the inconsistencies. However, this does nothing to bolster the plaintiff's claims of disability.  The lack of ongoing complaints in various parts of the body, such as in the left shoulder, simply establishes, as the ALJ found, that the plaintiff sought treatment for multiple transitory problems which did not meet the duration requirement.  20 C.F.R. § 416.909.

1    Likewise, the sporadic nature of the plaintiff's left foot

2  complaints also can be explained by the lapse of time but does nothing

3  to support a claim of ongoing disability from February, 2001.  Shortly

4  before the plaintiff filed her application for benefits, the plaintiff

5  received treatment in June and July, 2001, for complaints of a

6  recurrent left foot ganglion cyst. [AR 135-36.] The cyst was excised

7  on July 10, 2001 [AR 135], and by July 24, 2001, the plaintiff had no

8  complaints [AR 136.]

9    The plaintiff returned in January, 2002, with complaints of

10 another recurrent cyst which was excised on February 8, 2002. [AR 124,

11 128.] On March 3, 2002, the plaintiff had some residual sensitivity of

12 the scar of the left foot, but there was no recurrence of the ganglion

13 cyst, and the plaintiff was discharged from care.  The only

14 instruction given to the plaintiff was to wear soft top shoes for two

15 to three weeks. [AR 122.]

16    The plaintiff returned, however, in July, 2002, complaining of

17 pain, and she was referred to the USC/LAC clinic. [AR 121.] She was

18 first seen there at the Podiatry Clinic in September, 2002, with

19 complaints of tenderness to palpation considered out of proportion to

20 her impairment. She was given a return appointment and was deemed to

21 be disabled until December 7, 2002. [AR 166.]

22    On November 5, 2003, approximately two weeks before the hearing,

23 the plaintiff was again seen for her foot complaints.  At that time,

24 the plaintiff was prescribed physical therapy and Tylenol #3 for pain.

25 The plaintiff was to see a surgeon to discuss further treatment. The

26 plaintiff was given disability for only two weeks.  [AR 165.]

27 \\\

28 \\\

Thus, while it may be true, as the plaintiff asserts, that her complaints varied because of the course of time, this only underscores the transitory nature of some of the plaintiff's complaints.

There was, therefore, no error in the ALJ's assessment of the plaintiff's credibility.

**The treating physician's opinions**

The opinion of a treating physician is generally entitled to greater weight than the opinions of non-treating physicians.  This is so because the treating physician is employed to cure and has a greater opportunity to know and observe his patient than non-treating physicians.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). This is not to say, however, that the opinion of even a treating physician is "necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989).  However, if the ALJ rejects the treating physician's opinion in favor of that of a non-treating physician, and the opinion of a non-treating physician is based upon the same clinical findings considered by the treating physician, the ALJ must cite specific and legitimate reasons for the rejection. Andrews, 53 F. 3d at 1041. If the treating physician's opinion is uncontroverted, the ALJ's reason for rejecting the treating physician's opinion must be clear and convincing.  Id.

The plaintiff contends that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinion of her treating physician, Dr. Nagaraja G. Bhaskara.  On November 30, 2001, Dr. Bhaskara completed a Medical Source Statement in which he indicated that the plaintiff could lift less than ten pounds even occasionally.

He indicated that the plaintiff's ability to stand and/or walk was limited to a total of less than two hours in an eight-hour workday. Sitting was limited to only three hours in an eight-hour workday. [AR 130.] Dr. Bhaskara further opined that the plaintiff would have to alternate between standing and sitting.  He assessed that the plaintiff's ability to perform activities such as climbing, stooping, kneeling, crouching, crawling, reaching and manipulating were poor.[4] [AR 131.] The ALJ rejected this assessment noting that the form was not completely filled out and because the assessed limitations were not supported by the objective medical evidence. [AR 21.] The plaintiff, on the other hand, argues that Dr. Bhaskara had, in fact, provided complete information.  The plaintiff notes, for example, that the doctor listed left shoulder tendinitis, costochondritis and degenerative joint disease as well as the plaintiff's history of a motor vehicle accident as support for his opinion.  Additionally, argues, the plaintiff, the medical records which were attached to Dr. Bhaskara's form support his opinion. [Joint Stipulation at 7-8.]

The plaintiff's arguments are not persuasive.  First, Dr. Bhaskara failed to state what medical findings support his assessment that the plaintiff could not even lift ten pounds occasionally. Although there is reference to diagnoses of costochondritis and left shoulder tendinitis, x-rays of the left clavicle were normal [AR 139], x-rays of the cervical spine were normal [AR 144], and x-rays of the

---

[4]The plaintiff is correct that the ALJ incorrectly quoted Dr. Bhaskara as indicating that the plaintiff should never make these postural changes or finger or manipulate. [AR 21.] However, whether the ability to perform these functions is non-existent or poor, Dr. Bhaskara failed to state the reasons. [AR 131.] Any error, therefore, is harmless.  Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380 (9th Cir. 1984).

chest were normal [AR 143].  Except for a brief period of treatment for the left shoulder, the treatment records of the High Desert Hospital, where Dr. Bhaskara practices, do not disclose ongoing complaints or need for treatment of any chest complaints or neck complaints or any other complaints related to the motor vehicle accident.  Dr. Ha'eri, the orthopedist who treated the plaintiff for left shoulder complaints four weeks before Dr. Bhaskara's report, indicated disability for only one month. [AR 133.]

Dr. Bhaskara also fails to state why the plaintiff was so limited in her ability to stand and walk. Although the High Desert Hospital performed the ganglion cyst excision on July 10, 2001, the plaintiff had no complaints by July 24, 2001. [AR 135-36.] Although the plaintiff had subsequent complaints, these did not surface until after the date of Dr. Bhaskara's report.

Dr. Bhaskara did, however, attempted to provide an explanation for the limitations he assessed on the plaintiff's ability to sit. Dr. Bhaskara indicated that the plaintiff's "back hurts." [AR 130.] However, as noted by the ALJ, not only is there no objective evidence "supporting this alleged back pain," the plaintiff herself did not "consistently allege the existence of back pain." [AR 21.] In short, contrary to the assertions of the plaintiff, Dr. Bhaskara's assessment is essentially devoid of any supportive objective or clinical findings.  "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

\\\

\\\

1    Accordingly, the ALJ provided sufficiently specific reasons

2    supported by substantial evidence in the record for rejecting Dr.

3    Bhaskara's opinion.

4    **The ALJ's failure to recontact Dr. Bhaskara**

5    _____The plaintiff argues next that "if the ALJ did not believe there

6    was enough information provided on the assessment form or from Dr.

7    Bhaskara's records, then the ALJ had the duty to recontact the doctor

8    to provide the evidence the ALJ felt was missing from the report,"

9    citing 20 C.F.R. §§ 416.927(c)(3) and 416.912(e)(1). [Joint

10   Stipulation at 8.]

11   However, 20 C.F.R. § 416.912(e)(1) only requires recontact of the

12   treating physician where the evidence is inadequate to allow a

13   determination.  In the plaintiff's case, Dr. Bhaskara expressed his

14   opinion, he failed to cite supportive findings, and the treatment

15   record likewise failed to provide supportive findings or even a

16   history of consistent ongoing complaints.  Additionally, there is a

17   contradictory entry from the treating orthopedist which suggests only

18   a very short term disability.  The record was not inadequate to allow

19   a determination.

20   **The ALJ's failure to discuss certain evidence**

21   The plaintiff also asserts that the ALJ erred by failing to

22   discuss the records attached to Dr. Bhaskara's assessment, the records

23   from Antelope Valley Hospital where there is a diagnosis of cervical

24   strain, neck sprain and chest contusion, and the podiatry records

25   revealing recurrent ganglion cysts and surgical removal in early 2002.

26   The plaintiff cites 20 C.F.R. § 416.927(d) for the proposition that

27   every medical opinion will be evaluated, regardless of its source.

28   \\\

However, 20 C.F.R. § 416.927(d) does not require the ALJ to discuss, item by item, every statement in the medical record which could be construed as a medical opinion.  "Rather, [he] must explain why 'significant probative evidence has been rejected.'" <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

While claiming error on the part of the ALJ for failure to discuss the treatment records attached to Dr. Bhaskara's assessment, the plaintiff fails to state in what way they are significant or probative.  As noted, these records reveal normal x-rays; they reveal a very brief period from June 26, 2001, to July 24, 2001, of complaints related to a left foot ganglion cyst which was excised on July 10, 2001; they reveal no further left foot complaints until January, 2002, with excision performed February 8, 2002, with a discharge from care on March 3, 2002, and no restrictions outlined by the treating physician; and they reveal a recurrent cyst in July, 2002, at which point the record ends.  There are no complaints of back pain or chest pain, and the shoulder pain was of short duration of approximately one month with anticipated disability of another month.  [AR 121-45.]

The records of Antelope Valley Hospital are limited to the time period immediately following the motor vehicle accident.  The fact that the plaintiff was diagnosed at that time with chest contusion, cervical strain or neck sprain, without more, does not establish the existence of any medically determinable impairment which would be expected to last the required twelve months.

Although the ALJ did not specifically cite this evidence, it is clear that the ALJ had, in fact, evaluated this evidence, which he properly summarized as revealing "injuries related to her February 27,

2001 automobile accident and some follow-up treatment.  It also reflects treatment for ganglion cysts and other transitory, acute ailments." [AR 20.]

Similarly, the ALJ's failure specifically to refer to the records of the 2002 surgery for the ganglion cysts is not error.  The ALJ clearly recognized the recurrent nature of these cysts as evidenced by his finding that the only severe impairment that the plaintiff had were her ganglion cysts. [AR 23.]

**The plaintiff's confusion**

In arguing that because there are certain inaudible portions of the tape, the matter requires remand, the plaintiff now apparently asserts that there is a mental impairment–that of confusion.  This is based upon the following portions of the hearing:

ALJ:    Okay.  Ms. Washington, is there anything else now we haven't talked about?

CLMT:    [INAUDIBLE].

ALJ:    Now you have some confusion [INAUDIBLE] time.

[AR 197.]

Even assuming that the plaintiff testified that she was confused, rather than the ALJ noting some of the confusion resulting from the plaintiff's testimony [see AR 192, for example], there is no evidence of any mental impairment.

No physician has indicated any confusion or mental dysfunction.  To the contrary, Dr. Cassim described the plaintiff as neatly dressed with an appropriate mood.  "She has very good eye contact and has a very good attention span." [AR 160.]

The plaintiff, on the other hand, points to AR 181-94 as evidence of her confusion. [Joint Stipulation at 6.] However, for the most

part, the plaintiff was able to answer the ALJ's questions concerning her pain and her limitations and her daily activities easily without having the questions repeated or explained. [AR 181-87.] Where it was necessary to repeat questions, however, it does not appear to have arisen from confusion on the part of the plaintiff but rather the ALJ's attempts to elicit information from the plaintiff concerning her ability to walk, which required some persistence on his part.  [AR 187-88.]  On the other hand, when her attorney asked how many breaks she took between walking from the parking lot to the lobby of the hearing office, the plaintiff apparently had no difficulty in responding "about five breaks." [AR 189.]

        Clearly, there was little, if any, confusion evidenced by the plaintiff.  There were no claims of confusion or mental impairment at the time the plaintiff filed her application.  There are no indications from any of the physicians who have examined or treated the plaintiff of any confusion or other mental impairment.  The plaintiff's counsel did not request any further development concerning any alleged confusion during the hearing.  Even if the plaintiff had testified to confusion, which does not appear to be the case, such isolated references are "insufficient to raise [a] suspicion" that the plaintiff has any significant mental impairment which requires further development.  Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989), citing Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1986).

**The ALJ's residual functional capacity assessment**

        The plaintiff contends that the ALJ failed properly to assess the plaintiff's residual functional capacity because the ALJ failed adequately to consider the plaintiff's subjective complaints, the ALJ failed to include limitations assessed by Dr. Bhaskara and Dr. Alvaro,

1  and the ALJ improperly evaluated the assessment of consultative
2  examiner Dr. Cassim.

3      Inasmuch as the ALJ properly found the plaintiff to be not
4  entirely credible and inasmuch as the ALJ properly discounted the
5  opinion of Dr. Bhaskara, the failure to include their assessments in
6  the residual functional capacity was not error.

7      However, this court agrees with the plaintiff that the ALJ
8  misinterpreted the evidence in arriving at his residual functional
9  capacity assessment.

10      The ALJ indicated, <u>inter alia</u>, that in arriving at his residual
11  functional capacity assessment, he incorporated "the most generous
12  consultative examiner's back pain related limitations to medium
13  exertion work." [AR 21.] Presumably, the ALJ was referring to Dr.
14  Cassim, since Dr. Hambrecht did not find any physical limitations
15  whatsoever.[5] [AR 119.] Even so, it was Dr. Hambrecht, not Dr. Cassim,
16  who found some abnormal findings in the range of motion in the
17  plaintiff's back.  [AR 117; <u>compare</u> AR 161.] When the plaintiff saw
18  Dr. Cassim, the plaintiff apparently did not have any back complaints.
19  [AR 159.]  Nevertheless, it was Dr. Cassim who limited the plaintiff's
20  lifting capacity to medium level, apparently based upon the finding of
21  a dorsal ganglion cyst. [AR 162.] However, as the plaintiff argues,
22  Dr. Cassim also indicated that "'[t]hese limitations are if she has
23  \\\

24  ————————————

25      [5]The Commissioner argues, <u>inter alia</u>, that the independent
   findings of Dr. Hambrecht provided substantial evidence to support the
26  ALJ's RFC findings. [Joint Stipulation at 17].  <u>See</u> <u>Andrews</u>, 53 F.3d
   at 1041.  However, Dr. Hambrecht's examination took place during a
27  time before the plaintiff's ganglion cyst had become a significant
   problem.  Therefore, reliance upon Dr. Hambrecht's evaluation is
28  flawed.

the surgery done and the cyst removed'" [Joint Stipulation at 14; AR 162], a comment completely ignored by the ALJ.

On the other hand, arguably, no prejudice occurred inasmuch as the ALJ did not find that the plaintiff could stand and walk for six hours a day, which was part of Dr. Cassim's projected assessment. [AR 21; AR 162.] Rather, he found that the plaintiff required a sit/stand option, giving due consideration to the fact that the plaintiff apparently did not have the surgery for reasons not entirely clear.[6]

The ALJ's mischaracterization of an assessment presumably made by the plaintiff's podiatrist, Dr. Alvaro, however, is more problematic. The ALJ summarized this assessment as indicating "that the claimant is capable of work, but needs to change position between sitting and standing at will." [AR 21.]

However, the unsigned, undated Physical Capacities Evaluation form presumably completed by Dr. Alvaro indicates that the plaintiff could only sit for four hours during an eight-hour day, stand for zero hours in an eight-hour day, and walk for one hour out of an eight-hour day. [AR 170.]  This implies that the plaintiff is incapable of performing sustained activity for eight hours in a normal workday, which, in turn, suggests that the plaintiff is incapable of substantial gainful activity.  See SSR 96-8p.  Likewise, the assessment that the plaintiff could not ever lift even up to five pounds does not support a finding that the plaintiff could perform

_____

[6]The plaintiff suggests that she did not have the surgery because of the lack of success of the prior surgeries. [Joint Stipulation at 25.] The record suggests that the surgery in the 1980's resolved the problem of the ganglion cyst for many, many years.  The recurrent ganglion cyst of 2001 was also quickly resolved [AR 135-36].  Whether the excision of the cyst in 2002 was entirely successful, however, is not clear. (Infra.)

1  substantial gainful activity. [Id.] Although the ALJ clearly assumed

2  that this form was completed by Dr. Alvaro, the ALJ stated no reason

3  for rejecting this assessment; rather the ALJ erroneously treated this

4  assessment as if it were substantially in accord with the ALJ's own

5  residual functional capacity assessment. [AR 21.]  However, such an

6  interpretation of the Physical Capacities Evaluation responses is not

7  reasonable.  Where treating physicians' opinions are rejected, such as

8  the assessment presumed to be that of Dr. Alvaro, the ALJ is charged

9  with articulating reasons for the rejection, even where the record

10  might disclose legitimate reasons, and failure to do so requires

11  remand.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

12  **Past relevant work**

13  _____The plaintiff also makes several arguments concerning the

14  vocational expert's testimony and the ALJ's findings regarding the

15  plaintiff's past relevant work and her ability to perform other work

16  in the national economy.

17  First, the plaintiff notes that the vocational expert, contrary

18  to what the ALJ stated in his decision, did not testify that the

19  plaintiff was incapable of performing her past relevant work. [Joint

20  Stipulation at 28; AR 22.] The vocational expert was never asked

21  because the ALJ indicated that he did not believe that the plaintiff

22  "has any substantial, gainful activity"–i.e., past relevant work. [AR

23  195.]

24  Next, the plaintiff notes that the DOT numbers for the jobs cited

25  by the ALJ do not correlate with the jobs identified by the vocational

26  expert.  However, again, any error was harmless.  Booz, 734 F.2d at

27  1380.  The ALJ's error in correctly matching the particular jobs with

28  the proper DOT number does not alter the fact that the vocational

expert testified that the plaintiff could perform the jobs cited and that these jobs existed in significant numbers. [Compare AR 22 with AR 195-96.]

The plaintiff further argues that the hypothetical questions to the vocational expert were incomplete in that they did not adequately describe all of the plaintiff's limitations. Thomas, 278 F.3d at 956. The plaintiff charges that the ALJ erred in failing to consider her subjective complaints and the assessments of the treating physicians. However, the ALJ properly discounted the plaintiff's subjective limitations and the assessment of Dr. Bhaskara.  Accordingly, there was no error in failing to include these in the hypothetical to the vocational expert. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

However, the ALJ failed properly to evaluate the assessment presumed to be that of the plaintiff's treating podiatrist, and the ALJ will have to reassess the plaintiff's residual functional capacity, which in turn will more than likely require new hypothetical questions to the vocational expert.  At that time, the plaintiff will also have ample opportunity to pose any hypothetical questions which she believes describe her limitations.

The plaintiff also raises the issue of whether the plaintiff has past relevant work.  The plaintiff essentially contends that the work she performed as an in-home care giver did not constitute past relevant work, relying upon the Commissioner's findings that she had "little" or "no work experience." [Joint Stipulation at 28; AR 35, 40.]  A reevaluation of the plaintiff's residual functional capacity may require reassessment of step four of the sequential evaluation procedure which may, in turn, require a proper evaluation of whether

the plaintiff does, in fact, have past relevant work.  The work as a care-giver appears to have been of a short duration, although how short is not entirely clear [AR 73], and the plaintiff testified that she worked only part-time, three hours a day [AR 182] although in her Work History Report, the plaintiff indicated that she worked full time, eight hours a day, five days a week [AR 74].

Past relevant work is defined as work that an individual has performed within the past fifteen years that was substantial gainful activity and that lasted long enough for the individual to learn to do it.  20 C.F.R. § 416.960(b)(1).  "Substantial gainful activity is work activity that is both substantial and gainful."  It "is work activity that involves doing significant physical or mental activities."  "[W]ork may be substantial even if it is done on a part-time basis...."  Work is gainful if it is done for pay or profit or is the kind of work usually done for pay or profit, regardless of whether profit is realized.  20 C.F.R. § 416.972.  In evaluating whether work activity is substantial gainful activity, earnings are considered.  An individual working as an employee who earned more than $500 a month is generally presumed to have engaged in substantial gainful activity.  Earnings equal to or below $300 a month, however, are generally considered to be below substantial gainful activity levels. 20 C.F.R. § 416.974(b)(2)and (3).

Thus, depending upon the duration of the plaintiff's employment and her wages, the plaintiff's employment as an in-home care giver might not qualify as past relevant work.  Further evaluation may be required in this regard.

\\\

\\\

**Other issues**

        The plaintiff raises several other issues, the discussion of which is now obviated by the remand for reassessment of the treating podiatrist's assessment and reevaluation of the plaintiff's residual functional capacity.  If the plaintiff believes that there were relevant portions of the transcript missing due to the inaudible tape, the plaintiff will have ample opportunity at the hearing on remand to fill in the gaps in the testimony.

        The plaintiff also contends that the ALJ mischaracterized the evidence.  This court has already agreed that the ALJ mischaracterized the assessment presumably done by the treating podiatrist as well as other evidence in the record.

        Upon remand, the ALJ should first clearly indicate whether he finds the plaintiff's asserted back impairment to be a medically determinable impairment as defined in the regulations.  The ALJ should also attempt to obtain missing records.  At the hearing in this matter, the plaintiff apparently showed an appointment book, which is not part of the record, which the plaintiff contends indicates the dates of her visits to her treating physician.  The plaintiff testified, through representations of her attorney, that she saw her physician four times from September until December, 2002, and that she saw him ten times in 2003. [AR 191; see also AR 100.]  However, the medical records themselves indicate no clinic visits after September 17, 2002, until November 5, 2003.  These records were to be obtained, but the only evidence submitted after the hearing was the Physical Capacities Evaluation form and the Residual Functional Capacity Assessment form completed by Dr. Alvaro. [AR 171-72.]  Evidence of the these intervening visits would hopefully clarify the severity of the

plaintiff's foot injuries and the severe limitations imposed, presumably, by Dr. Alvaro.[7]

The ALJ should also inquire as to why the plaintiff did not have another surgery after the surgery of February, 2002 [see AR 159], if, in fact, the plaintiff did not have the surgery [see AR 183-84; but see AR 100].

Additionally, if necessary, the ALJ should re-assess whether the plaintiff's work as a care-giver qualified as past relevant work [20 C.F.R. §§ 20 C.F.R. § 416.960(b)(1), 416.972, 416.974(b)(2)and (3)]. He should obtain the services of a medical advisor and call a vocational expert to testify at the hearing.

## ORDER OF REMAND

The Court has reviewed the pleadings, the transcript of the record, and joint stipulation of the parties.  In accordance with the foregoing discussion, the magistrate judge finds that good cause has been shown for remanding the case to the Commissioner.

IT IS ORDERED that this case be remanded to the Commissioner of the Social Security Administration pursuant to sentence four of 42 U.S.C. section 405(g) for further administrative proceedings consistent with the reasons set forth herein.

January 4, 2006


_____/s/_____
JAMES W. McMAHON
United States Magistrate Judge

_____

_____

[7]The plaintiff testified that her physician is named H. Karimi. [AR 191; see AR 100.]